UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEFFREY D. LEISER,

      Plaintiff,

v.                Case No. 23-cv-2-pp

DANIEL LAVOIE, ANGELA THOMPSON,
JODI FRYCZYNSKI, CINDY BARTER
and DR. STEFFANIDES,

      Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING AS MOOT PLAINTIFF'S MOTION TO USE RELEASE ACCOUNT TO PAY FILING FEE (DKT. NO. 2)**

---

  Jeffrey D. Leiser, who is confined at Redgranite Correctional Institution and is representing himself, filed an amended complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The plaintiff has paid the full filing fee.[1] This decision screens his amended complaint. Dkt. No. 4.

**I.  Screening the Amended Complaint**

  A.  <u>Federal Screening Standard</u>

  Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated individuals seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

---

[1] The plaintiff filed a motion asking the court to authorize him to use his release account to pay the filing fee. Dkt. No. 2. Since filing the motion, the court has received the full filing fee. The court will deny that motion as moot.

1

§1915A(a). The court must dismiss a complaint if the incarcerated individual raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by

plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff has sued Daniel LaVoie, Director of the Wisconsin Department of Corrections Bureau of Health Services; Angela Thompson, Health Services Manager at Redgranite Correctional Institution; Jodi Fryczynski and Cindy Barter, registered nurses at Redgranite; and Dr. Steffanides, medical doctor at Redgranite. Dkt. No. 1 at ¶¶3-7. The plaintiff sues all of the defendants in their individual capacities. Id.

The plaintiff alleges that on April 6, 2022, without reviewing the plaintiff's medical chart or seeing him, Dr. LaVoie implemented a new policy limiting the amount of "OTC Tylenol 325 mg; 500 mg to 50 tabs/30 days." Id. at ¶13. According to the plaintiff, Dr. Lavoie's new policy states:

> The Bureau of Health services has determined new limits for the use of medications listed in the table below. Over the consumption [sic] of these medications could lead to unintended consequence.
>
> We understand you may have concerns regarding the limits imposed on the below medications. Please understand the purpose of this change is to align our practice with community standards. Approaches will be taken on a case-by-case basis for those individuals who may need below limits adjusted.

Id. at ¶14. The plaintiff alleges that he was prescribed Tylenol, 500 milligrams, two tablets, three times a day for his bilateral nerve impingement, but the new policy allows him to receive only one-and-a-half pills per day, which causes unnecessary pain and suffering for his serious back injury (which he says the

3

defendants refuse to treat). Id. at ¶15. The defendants allegedly classify the plaintiff's pain as chronic back pain, but he says it is a serious medical injury of the L4-5 bilateral nerve impingement that causes physical and psychological pain and suffering. Id. at ¶18. The plaintiff says that limiting him to one-and-a-half tablets a day causes him to needlessly suffer physical and psychological pain, especially given the low cost of Tylenol. Id. at ¶19.

On April 17, 2022, the plaintiff allegedly wrote Dr. LaVoie, complaining that the new policy caused him severe pain and suffering. Id. at ¶20. The plaintiff states that he did not receive a response from anyone at the Bureau of Health Services. Id.

The same day he wrote to Dr. LaVoie (April 17), the plaintiff allegedly submitted a health service request to Thompson stating that he couldn't reorder his Tylenol until April 23, and that the new policy violated his Eighth Amendment right to obtain medical treatment. Id. at ¶23. The plaintiff states that Thompson responded on June 15, stating,

> [y]ou were provided with the memo dated 4/6/22 with updated over the counter (OTC) monthly medication tablet limits. You had an assessment on 4/15/22 with you [sic] Advanced Care Provider, Dr. Steffanides, and there were no changes to your OTC medication. You may supplement any needs you may have with OTC medications from cant[]een or catalog.

Id. at ¶24. The plaintiff alleges that although he had seen Dr. Steffanides on April 15 and asked him to override the new OTC policy of fifty tablets a month, Steffanides said that Thompon denied the request. Id. at ¶25. The plaintiff states that he has been trying to order OTC Tylenol from canteen, but it has

been out of stock, and he has received it "maybe twice" since April 2022. Id. at ¶26.

The plaintiff alleges that on April 20, 2022, he submitted a health service request stating that he experienced pain because he went from taking six Tylenol tablets per day to one-and-a-half a day. Id. at ¶21. The next day, Nurse Barter allegedly responded to the plaintiff's request, stating, "Letter from Medical Director Medication list. HSU is not required to replace the Acetaminophen limits (Tylenol)[.] Please utilize all forms of pain management in your plan of care. Discuss these forms at your next ACP visit. 'Tentative 6/10/22.'" Id. at ¶22.

On August 23, 2022, the plaintiff allegedly submitted a complaint to Thompson stating that the canteen was out of OTC Tylenol and complaining about the policy limiting medication to fifty tablets monthly. Id. at ¶27. In response, Thompson allegedly said that the plaintiff should supplement with canteen medication, ignoring his complaint that the canteen was always out of Tylenol. Id. at ¶28. Also on August 23, the plaintiff allegedly submitted a health service request complaining that he did not have any pain medication (Tylenol). Id. at ¶29. He states that the next day, Nurse Borgon (not a defendant) saw him and he asked Borgon to ask Dr. Steffanides to allow the plaintiff an exception to the fifty-tablet limit. Id. That same day (August 24), the plaintiff allegedly received correspondence from Borgon stating that Dr. Steffanides had said he would not be pursuing an increase in the plaintiff's monthly limit of Tylenol at that time. Id. at ¶30.

5

On October 17, 2022, Nurse Fryczynski allegedly responded to a health service request submitted by the plaintiff, which stated that because of the fifty-tablet limit, the plaintiff would be out of Tylenol before order time and the canteen was also out of Tylenol. Id. at ¶¶41-42. Fryczynski allegedly did not see the plaintiff but instead she marked that he was scheduled to be seen, "ACP 11/14/22." Id. at ¶42. The plaintiff says Fryczynski denied him treatment without reviewing his medical file or investigating his allegations. Id. The plaintiff says he was seeking health services to be seen "ASAP" and not to be told to wait almost a month before anything would be done to help his "severe back and testicle pain." Id.

The plaintiff alleges that on November 22, 2022, Dr. Steffanides saw him, ordered an MRI and prescribed Ibuprofen 800 milligrams, one tablet, two times daily as needed for pain. Id. at ¶31. On December 26, the plaintiff allegedly submitted a health service request asking why he did not have an order for Ibuprofen, 800 milligrams, as ordered by Steffanides. Id. The next day, Thompson allegedly responded that the order ended on December 23. Id. The plaintiff states that that same day, he submitted another health service request about his order for Ibuprofen 800 ending; on December 28, Thompson acknowledged that he should have "APAP" until Dr. Steffanides returns and that there is "APAP & Iprin" on canteen. Id. at ¶33. On December 28, the plaintiff allegedly submitted another health service request about Thompson's suggestion that he buy medication from the canteen; the next day, Thompson responded by stating that she does not prescribe medications and that

6

medications are ordered with monthly tablet limits. Id. at ¶¶34-35. The plaintiff says Thompson also stated that there was no order for Ibuprofen 800. Id. at ¶36. According to the plaintiff, Thompson signed the health service request as a nurse, not as the health service manager, and therefore she acted with deliberate indifference to his serious pain and suffering. Id. at ¶38.

The plaintiff alleges that on December 21, 2022, he submitted a health service request to the health services unit manager about being taken for an MRI without his medication, since he is severely claustrophobic. Id. at ¶44. Nurse Fryczynski allegedly responded for the manager and stated, "Not a HSU issue the medication was sent with the officers[.] Please ask for the medication next time." Id. at ¶45. The plaintiff alleges that because Fryczysnki answered for the unit manager, she denied him his right to complain about nurses' misconduct in not having the ordered medication for his claustrophobia addressed by the person who trains and supervises nurses. Id. at ¶48.

Also on December 21, 2022, the plaintiff allegedly submitted a health service request to the psychiatrist stating that the nurses and officers refused to timely provide his psychiatric medication which resulted in withdrawal symptoms. Id. at ¶46. Fryczynski allegedly responded for the psychiatrist and stated that according to the "MAR summary," the plaintiff had been given his medication and that he should let health services unit staff know if this continued. Id. at ¶47. The plaintiff says that Fryczynski's alleged interference with the plaintiff's "psych request" constituted deliberate indifference because Fryczynski was trying to cover up deliberate indifference in keeping the plaintiff

7

from getting mental health treatment from the psychiatrist. Id. at ¶49. The plaintiff states that the medication for his mental health is called "venlafaxine (Effexor)" and it causes major withdrawal symptoms. Id. at ¶50. According to the plaintiff, Fryczynski's alleged response to his request for psych services interfered with him obtaining mental health treatment to stop the health services unit and officers from causing and inflicting severe pain. Id. at ¶52.

The plaintiff claims that the defendants' misconduct amounts to deliberate indifference to his serious medical needs because they denied him medication for his severe back, testicle and knee pain. Id. at ¶54. For relief, the plaintiff seeks $20,000 from each defendant. Id. at 12. He also asks that the court refer this case to the Wisconsin Department of Justice to investigate having the defendants criminally charged for abusing residents of penal facilities, in violation of Wis. Stat. §940.29. Id.

    C.    Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of a prisoner. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

8

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff may proceed on an Eighth Amendment claim against the defendants based on allegations that after the pain medication for his serious back injury was reduced under the new medication policy that went into effect in April 2022, he often did not receive more medication than allowed under the policy, which resulted in pain and suffering. While it appears that the plaintiff was allowed to supplement his Tylenol by obtaining medication from the canteen, the canteen allegedly often didn't have Tylenol and the defendants knew this. (The source of the plaintiff's pain varies in the complaint from his back and later to his back and testicles and subsequently to his back, testicles and knee.)

The plaintiff may not proceed with any claims based on allegations that he was taken for an MRI without the medication he needed for his claustrophobia and that nurses and officers failed to timely provide him with his psychiatric medication. While these allegations relate to medication, they are not sufficiently related to the plaintiff's Tylenol allegations to belong in the

9

same case. See Fed. R. Civ. P. 20(a)(2). Moreover, while the plaintiff alleges that Nurse Fryczynski responded to complaints he filed about these incidents, he does not allege that she had any involvement in him not receiving his medication. Even if these claims were related, the complaint does not state a claim for relief against Fryczynski based on the allegations.

As for the plaintiff's request that the court refer his allegations to the Wisconsin Department of Justice for investigation of possible violations of Wis. Stat. §940.29,[2] that is not relief that is appropriate for this court to grant in a §1983 case. If the plaintiff believes that criminal offenses have occurred, he may report his concerns to the appropriate investigating authorities.

## II. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion to use his release account to pay the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint (Dkt. No. 4) and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendants Daniel LaVoie, Angela Thompson, Jodi Fryczynksi, Cindy Barter and Dr. Steffanides. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within sixty days.

---

[2] Section 940.29, a Wisconsin criminal statute, provides: "Any person in charge of or employed in a penal or correctional institution or other place of confinement who abuses, neglects or ill-treats any person confined in or a resident of any such institution or place or who knowingly permits another person to do so is guilty of a Class I felony."

10

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court includes with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 13th day of July, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**